# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-1003V

| | |
|---|---|
| EVELYN GONZALEZ,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: May 6, 2024 |

*Jonathan Joseph Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*James Vincent Lopez*, U.S. Department of Justice, Washington, DC, for Respondent.

## **DECISION DISMISSING PETITION**[1]

On June 13, 2022, Evelyn Gonzalez filed an amended petition[2] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of a meningococcal conjugate vaccine she received on July 30, 2019. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner filed the original petition on February 26, 2021.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner cannot show she suffered the residual effects of her right-sided shoulder injury for more than six months – and therefore the Petition warrants dismissal, since all Vaccine Act claims must meet the severity requirement.

## I. Relevant Procedural History

Ms. Gonzalez filed the first version of her petition and medical record exhibits on February 26, 2021, with an amended Petition in June 2022. ECF Nos. 1, 22-23. On November 7, 2022, after reviewing the records in the case, Respondent filed his report pursuant to Vaccine Rule 4(c) and a Motion to Dismiss. ECF Nos. 28-29.

Respondent argued therein that Petitioner had not shown that the symptoms from her injury lasted for more than six months. Rule 4(c) Report at 10. Respondent noted that just three and a half months after vaccination, Ms. Gonzalez was evaluated by athletic trainer Olivia Hartman, ATC, at NEU Sports Medicine. Ex. 3 at 2. The athletic trainer noted Petitioner had "been back to normal activity" since August 24, 2019, and had "not complained of any shoulder pain or decreased ROM." *Id.* The treatment note related to Petitioner's shoulder was closed at that time. *Id.* Then for the next approximately 10 months, from November 12, 2019, to September 30, 2020, there is no record of Petitioner receiving treatment for her right shoulder.

Additionally, Respondent argued, onset of Ms. Gonzalez's right shoulder pain in September 2020 was not SIRVA-related, but rather the result of a new injury that occurred while serving a volleyball at practice. Ex. 3 at 13. Thus, Petitioner's shoulder pain appeared to have resolved in the summer of 2019 – and did not persist for the requisite six months after vaccination to establish the severity requirement under 42 U.S.C. § 300aa-11(c)(D)(i). *Id*.

Petitioner filed a response to the Motion to Dismiss ("Response") along with an affidavit from one of Ms. Gonzalez's treating providers, Dr. Peter Chalmers, who stated that he believed Petitioner's vaccine contributed to "some of the symptoms" she reported in early 2021. Ex. 14 at 1.

The parties have briefed the issues in dispute (Motion to Dismiss and Rule 4(c) Report "Motion" and "Response") and have requested that I issue a ruling. My findings are presented below.

## II.     Issue

At issue is whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. 42 C.F.R. § 100.3(a) XV.B. (Meningococcal vaccines); Section 11(c)(1)(D)(i) (statutory six-month requirement).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) report, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Petitioner's medical history is unremarkable for any shoulder symptoms or injuries prior to the date of vaccination. *See generally* Ex. 10.

- Petitioner (age 18) received an intramuscular meningococcal conjugate vaccine on July 30, 2019, at the office of her primary care provider located in Solana Beach, California. Ex. 10 at 190-95. The vaccination record states that the vaccine was administered in her right shoulder. *Id*. She received the vaccination in preparation for attending college as an incoming freshman at Northeastern University in Boston, Massachusetts. Ex. 3 at 2; Ex. 1 at 5.

- Fifteen days after vaccination, on August 14, 2019, Ms. Gonzalez presented to sports medicine specialist Dr. Michael Beasley at the Boston Children's Hospital, Sports Medicine Division for an initial evaluation for "[r]ight shoulder pain." Ex. 2 at 4-5. Petitioner reported that "[s]he felt that the injection was higher than normal and had immediate pain upon administration of the injection. Since then[,], her pain [h]as persisted and gotten worse since she started playing volleyball at school…" *Id*. at 4. On exam, Ms. Gonzalez had tenderness to palpation of her right deltoid and

pain with abduction, flexion, and internal rotation of her right shoulder. *Id*. at 5. Dr. Beasley's assessment stated "[w]e suspect that her pain is likely secondary to shoulder injury related to vaccine administration (SIRVA)[,] which is a well[-]recognized inflammatory response noted after administration of vaccines higher than normal in the deltoid region. . . . She does have some evidence of a possible nerve irritation from the administration of the vaccine given her symptoms of numbness and tingling." *Id*. He ordered an MRI. *Id*.

- On August 14, 2019, Ms. Gonzalez underwent an MRI of her right deltoid that showed a "[f]ocal complex fluid collection within the subdeltoid bursa, consistent with inflammatory bursitis," and "[l]ow grade supraspinatus, infraspinatus, and subscapularis tendinopathy." Ex. 2 at 7. Dr. Beasley reviewed the MRI that day and noted it "does seem to show subdeltoid bursitis likely consistent with an injury related to her shoulder immunization, and without significant evidence of other structural concerns." *Id.* at 5.

- On August 15, 2019, 16 days after vaccination, Ms. Gonzalez was evaluated by athletic trainer Kate Delude at Northeastern, who noted that "Patient is a freshman volleyball athlete. Prior to coming to campus[,] she received her mandatory meningitis [sic] immunization on 7/30/19. The operator injected her hitting shoulder. She reported that after the injection she ha[d] almost zero ROM in her shoulder. She now has almost full ROM but has pain. She sat out the first day of practice then played the next 3 days." Ex. 2 at 7.

- In an email from Dr. Beasley to the athletic trainer, Dr. Beasley advised that Ms. Gonzalez's shoulder "looks as suspected like just inflammation from injection of subdeltoid bursa, surrounding tissue." *Id.* Dr. Beasley's recommendation was to limit Petitioner, as much as possible, from overhead activity and treat with ice. *Id.* The athletic trainer's plan was for Ms. Gonzalez to "not participate in volleyball activities" and engage in bike conditioning and lower body lifting. *Id.*

- On August 21, 2019, 22 days after vaccination, Ms. Delude again evaluated Ms. Gonzalez. Ex. 3 at 2. Ms. Gonzalez had been able to play volleyball that day with the restriction of no overhead activity. *Id.* She reported "one instance where she had pain but overall [said] she felt really good," with "no pain after practice." *Id.* The plan was to participate in practice again without overhead activity. *Id.*

- On November 12, 2019, approximately three and a half months after vaccination, Ms. Gonzalez was evaluated by athletic trainer Olivia Hartman, ATC, at Northeastern University Sports Medicine. Ex. 3 at 2. Hs. Hartman noted, "Athlete has been back to normal activity since I came on as the volleyball athletic trainer 8/24. Athlete has not complained of any shoulder pain or decreased ROM. Note will be closed at this time." *Id.*

- For the next approximately 10 months, from November 12, 2019, to September 30, 2020, there is no record of Ms. Gonzalez receiving treatment of her right shoulder. In her affidavit, Ms. Gonzalez stated that "[w]hen [she] returned to [NEU] in January 2020 after the holiday break, [she] reported right shoulder pain, weakness and limited range of motion to [her] coach and trainers." Ex. 1 at 3. She further stated in her affidavit that when she returned home in March 2020, due to Covid-19, she had "right shoulder pain when reaching, pulling, or lifting." *Id.* She stated she took over-the-counter medications for pain, stretched, and iced her shoulder, and did home physical therapy. During this ten-month period, Ms. Gonzalez also had periodic follow ups with her primary care provider related to monitoring of isotretinoin therapy for acne and did not report any right shoulder issues. Ex. 10 at 141-88.

- On September 30, 2020, approximately 14 months after vaccination, on September 30, 2020, Ms. Gonzalez had a virtual consultation with athletic trainer Mike McKenney, MS, ATC, at Northeastern University Sports Medicine. Ex. 3 at 13. Mr. McKenney noted Petitioner's history as follows: "[she] believes she hurt her [r]ight shoulder last night during practice, her serving shoulder. She describes a very abbreviated warm-up prior to full serves that consisted of throwing the ball 3 times to a partner and then going into full serves. She was able to demonstrate almost full shoulder flexion and abduction overhead, but discomfort was present. . . . She has not been keeping up with the preventative exercises they were taught last year, but I advised she could continue with those if they were below the shoulder and not past neutral in [internal rotation]/[external rotation]." Petitioner was advised to follow up the next day for an in-person evaluation. *Id.*

- On October 1, 2020, Ms. Gonzalez was evaluated in person by Mr. McKenney at Northeastern Sports Medicine for right shoulder pain. Ex. 3 at 12-13. On exam, she had full range of motion, but posterior pain with external rotation and flexion past 90 degrees. *Id.* There was no pain with palpation. *Id.* There was weakness with external rotation, but no other major strength deficit. *Id.* The assessment was that Petitioner "may have strained

6

the [internal rotation] group of her [rotator cuff]." *Id.* Ms. Gonzalez was advised regarding a home exercise program, and overhead volleyball hitting was restricted. *Id.*

- From October 1, 2020, through November 11, 2020, Ms. Gonzalez continued to participate in volleyball practice, with activity restrictions, and received rehabilitation and therapy from the athletic trainers at Northeastern University Sports Medicine. Ex. 3 at 12.

- On November 17, 2020, Ms. Gonzalez returned to Dr. Corrado, who suspected a "labral or rotator cuff pathology" and ordered an MRI arthrogram. Ex. 3 at 12.

- On November 30, 2020, Ms. Gonzalez underwent a right shoulder MRI arthrogram at Tufts Medical Center that showed a "[f]ocal full thickness tear of the anterior fibers of the supraspinatus muscle" and a "[l]ow-grade articular surface fraying of the posterior fibers of the supraspinatus." Ex. 2 at 11; Ex. 7 at 6-7.

- On December 11, 2020, Ms. Gonzalez was evaluated by athletic trainer Christen Chiesa at Northeastern University Sports Medicine. Ex. 3 at 10-11. Petitioner had a history of "[right] shoulder pain since late September." *Id.* Ms. Gonzalez reported that "she can think of a couple instances where this could have occurred, one of which was serving the volleyball." *Id.* Petitioner had pain rated 1-7/10. *Id.* Her past medical history related to her shoulder included "subacromial bursitis." *Id.*

- Approximately 16 ½ months after vaccination, on December 14, 2020, orthopedic surgeon Dr. Ramappa evaluated Ms. Gonzalez at Beth Israel Deaconess Medical Center. Ex. 5 at 10-12. Dr. Ramappa noted Petitioner's history: 20 year[-]old healthy volleyball player who presents with [right] shoulder pain that began in September 2020. She experienced pain during a serve and has since had difficulty controlling her arm. Her shoulder pain and weakness has worsened since the onset of the injury. She took 1.5 [weeks] off from volleyball, but she has been actively playing with her pain. She has not performed formal PT. Her pain is worsened with overhead activity and washing her hair. She has a history of shoulder bursitis. *Id.* On exam, Ms. Gonzalez had full ROM and strength, with pain and positive impingement signs. *Id.* Dr. Ramappa noted the prior MRI demonstrated "a partial thickness supraspinatus tear with intratendinous cyst." *Id.* The assessment was "[right] shoulder impingement, partial thickness

7

[supraspinatus] tear." *Id.* Dr. Ramappa and petitioner discussed different treatment options, and Petitioner elected to proceed with PT. *Id.*

- From December 18, 2020, to January 30, 2021, Petitioner participated in additional rehabilitation and therapy from the athletic trainers at NEU Sports Medicine. Ex. 3 at 3-9.

- On January 25, 2021, Ms. Gonzalez had a telephone consultation with Dr. Ramappa and reported continued pain in her shoulder despite attending PT. Ex. 5 at 13. Petitioner advised that she would follow up to discuss treatment options. *Id.*

- Over a year and a half after vaccination, on February 4, 2021, Petitioner had a telehealth consultation with Peter Chalmers, M.D., a shoulder, and elbow specialist at the University of Utah Health Orthopedics Center. Ex. 6 at 154-56. Dr. Chalmers noted Petitioner's right shoulder pain and stiffness "began in October [2020] associated with volleyball." *Id.* He also noted Ms. Gonzalez "had some pain before due to a (meningococcal) vaccine in August of 2019." *Id.* Petitioner denied "pain radiating down to the hand, neck pain, or numbness." *Id.* The assessment was a "right partial thickness cuff tear and biceps tendonitis." *Id.* Petitioner elected to proceed with surgery. *Id.*

- On February 12, 2021, Ms. Gonzalez underwent a right shoulder arthroscopic debridement and biceps tenodesis, performed by Dr. Chalmers. Ex. 6 at 49-57. Dr. Chalmers' operative findings included a type II superior labrum from anterior to posterior ("SLAP") tear and posterosuperior fraying consistent with internal impingement. *Id.* There was also significant tenosynovitis in the humeral groove of the biceps tendon. *Id.*

- On February 26, 2021, two weeks after surgery, Ms. Gonzalez had her initial post-operative PT session. Pet. Ex. 6 at 29-34. At this session, Petitioner reported the following history: "[Patient] [r]eports over the past 1.5 years [] off and on [right] shoulder pain associated with collegiate volleyball. [Patient] [r]eports an injection, rest through summer, injury in Oct 2020 with a serve and progressive symptoms of pain and episodes of drastic pain." *Id.* at 29.

- On March 4 and 12, 2021, Petitioner attended additional post-surgical PT sessions at the University of Utah Health Orthopedics Center. Ex. 6 at 15-

25. On March 4, 2021, Petitioner reported she felt like she had "turned a corner." *Id.* at 22. On March 12, 2021, she reported "feeling better each week" and having no problems with her HEP. *Id.* at 15.

- On April 4, 2021, Petitioner saw Dr. Chalmers for a post-operative consultation. Ex. 6 at 9-11. Petitioner was "[d]oing great so far" and her pain was well controlled. *Id.*

- On April 26, 2021, Petitioner had an initial evaluation for PT at The Training Room in California. Ex. 11 at 107-11. Her reported pain was 0-5/10. *Id.* The goal was to return to volleyball during the August 2021 preseason. *Id.*

- On May 20, 2021, three months after surgery, Ms. Gonzalez had a post-operative telehealth consultation with Dr. Chalmers regarding her right shoulder. Ex. 6 at 3-4. Petitioner was "[d]oing great" and her "pre-operative pain [was] resolved." *Id.*

- According to the most recent records filed as of July 17, 2021, Petitioner was still in PT at The Training Room, having completed 29 sessions. X. 11 at 20-22.

**V.       Analysis - Six Month Sequela**

In order to state a claim under the Vaccine Act, a petitioner must establish the "severity" requirement demonstrating that the vaccinee has either:

(i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

§11(c)(1)(D).

In this case, to satisfy the Vaccine Act's severity requirement, Ms. Gonzalez must show that she suffered symptoms of her alleged SIRVA beyond January 30, 2020. Respondent argues that Petitioner has failed to meet her burden on this point. In support, Respondent notes that on November 12, 2019 (approximately three and a half months after vaccination), Ms. Gonzalez was evaluated by athletic trainer Olivia Hartman, ATC, at NEU Sports Medicine who stated that Petitioner had "been back to normal activity"

since August 24, 2019, and had "not complained of any shoulder pain or decreased ROM." *Id*. The treatment note related to Petitioner's shoulder was closed at this time. Response at 9-10. Then for the next approximately ten months (from November 12, 2019, to September 30, 2020 – meaning past the severity "cutoff of late January 2020) there is no record of Petitioner receiving treatment for her right shoulder. *Id*. In effect, as Respondent argues, Ms. Gonzalez's shoulder pain appears to have mostly resolved by August 2019. She thereafter had minimal treatment through November 2019, when she ceased medical care for the injury. During this time, Petitioner actively participated in the "intense condition" associated with playing Division I college volleyball. Ex. 9 at 19.

Complaints of renewed pain after September 2020 seem more likely the product of an athletic injury. On September 30, 2020, for example, Petitioner's athletic trainer noted that Ms. Gonzalez "believes she hurt her [r]ight shoulder last night during practice, her serving shoulder. . . . She has not been keeping up with the preventative exercises they were taught last year." Ex. 3 at 13. From that date forward, Ms. Gonzalez's right shoulder symptoms are consistently associated with playing volleyball.  Ex. 3 at 13 (On October 1, 2020, athletic trainer Mike McKenney's assessment was that Petitioner "may have strained the [internal rotation] group of her [rotator cuff]."); Ex. 3 at 10-11 (On December 11, 2020, athletic trainer Christen Chiesa noted Petitioner's history of "[right] shoulder pain since late September," and Petitioner reported "she can think of a couple instances where this could have occurred, one of which was serving the volleyball"); Ex. 5 at 10-12 (On December 14, 2020, orthopedic surgeon Dr. Ramappa noted Petitioner's history of "[right] shoulder pain that began in September 2020," which was attributed to a serve); Ex. 6 at 154-56 (On February 4, 2021, shoulder and elbow specialist Dr. Chalmers noted Petitioner's history of right shoulder pain and stiffness that "began in October [sic] [2020] associated with volley[]ball"); *id.* at 29-34 (On February 26, 2021, at an initial PT evaluation, Petitioner reported an "injury in Oct[ober] [sic] 2020 with a serve and progressive symptoms of pain and episodes of drastic pain"). There is no mention in any of these notes of a vaccine-related injury. Thus, the initial 10-month treatment gap from November 12, 2019, to September 30, 2020, is the most pertinent period of time for evaluation of the six-month severity requirement.

In many cases, a treatment gap that overlaps with the deadline for the six-month severity "endpoint," measured from the date of onset, does not bar a finding of severity. *See* e.g., *Law v. Sec'y of Health & Hum. Servs*., No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Mar. 27, 2023); *Kilgore v. Sec'y of Health & Hum. Servs.,* No. 21-1390V, 2023 WL 7130175, at *6 (Fed. Cl. Sept. 29, 2023); *Grieshop v. Sec'y of Health & Human Servs.*, No. 14-119, 2015 WL 4557620, at *5–6 (Fed. Cl. Spec. Mstr. June 5, 2015). A failure to seek treatment during such a gap does not inherently mean an individual's SIRVA-related pain has ceased, since claimants often live with the pain, based upon the expectation it

will subside, or because of the reasonable desire to avoid unnecessary treatment. Claimants also may in that timeframe see medical professionals for unrelated concerns, where they would not logically mention an unrelated physical issue. *See e.g.*, *Rowe v. Sec'y of Health & Hum. Servs.*, No. 17-1182V, 2020 WL 6281742, at *3 (Fed. Cl. Sept. 24, 2020). And the length of the gap also bears on how much weight it should be given.

Here, however, the mix of evidence preponderates against a favorable severity finding. In particular, I give weight to the fact that the Petitioner was able to engage in a strenuous exercise program associated with playing college volleyball despite her pain (activity that would reasonably be expected to prove difficult to perform for anyone, but especially an individual with a persistent shoulder injury). Moreover, after this training, Petitioner obtained treatment on several occasions for pain impacting her *elsewhere* in her body – but not for her shoulder. *See e.g.,* Ex. 10 at 141-88. This not only suggests the shoulder was not then an issue, but also that she had the opportunity to seek treatment – and did so readily for issues bothering her. And finally, the gap itself, and what transpired during it, allows for other factors to have caused the pain to return – independent of the vaccination. All of the above is unsupportive of severity in this case.

Accordingly, the record does not preponderate in favor of the conclusion that Petitioner's SIRVA likely continued during this gap – and thus Petitioner cannot establish that she suffered the residual effects of her left shoulder injury for more than six months.

## VI. CONCLUSION

Under the Vaccine Act, to be compensable, the vaccine injury alleged must either persist for more than six months or require inpatient hospitalization and surgical intervention. § 11(c)(1)(D)(i).  In this case, the record does not contain medical records or a medical opinion sufficient to demonstrate that Petitioner is entitled to compensation. For these reasons, **Petitioner's claim for compensation is denied and this case is dismissed. The Clerk shall enter judgment accordingly**.[4]

IT IS SO ORDERED.

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.