## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| EVELYN GONZALEZ, ) | |
| ) | |
| Petitioner, ) | No. 21-1003 |
| ) | |
| v. ) | Filed: October 24, 2024 |
| ) | |
| SECRETARY OF HEALTH AND ) | Re-issued: November 8, 2024* |
| HUMAN SERVICES, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Petitioner Evelyn Gonzalez seeks review of a decision dismissing her petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.* ("Vaccine Act"). Ms. Gonzalez alleges that she suffered a shoulder injury caused by the administration of a meningococcal vaccine ("meningitis vaccine"). On May 6, 2024, the Chief Special Master denied Ms. Gonzalez's claim and dismissed her petition, finding that she had not established by a preponderance of evidence that her injury lasted long enough to meet the severity requirement under the Vaccine Act. In accordance with Rules 23 and 24 of the Vaccine Rules of the United States Court of Federal Claims ("Vaccine Rules"), Ms. Gonzalez filed a Motion for Review of the Chief Special Master's Decision Dismissing Petition. For the reasons discussed below, the Chief Special Master's decision was not arbitrary and capricious or contrary to law. Therefore, the Court **DENIES** Ms. Gonzalez's Motion.

---

* The Court issued this opinion under seal on October 24, 2024, and directed the parties to file any proposed redactions by November 7, 2024. As the parties do not propose any redactions, the Court reissues the opinion publicly in full.

# I.  BACKGROUND

## A.     Ms. Gonzalez's Medical History, Onset of Symptoms, and Diagnosis

On July 30, 2019, when Ms. Gonzalez was 18 years old, she received a meningitis vaccine in her right deltoid.[1]  Pet'r's Ex. 10 at 193, ECF No. 14-1.  In an affidavit, she states that before receiving the vaccination, she had "no history of pain, inflammation or dysfunction in [her] right shoulder."  Pet'r's Ex. 1 ¶ 6, ECF No. 1-3.  At the time of vaccination, she had been preparing for her freshman year at Northeastern University in Boston, where she would be a member of the women's volleyball team.  *Id.* ¶ 9.  Ms. Gonzalez claims that upon receiving the vaccine, she felt "immediate severe pain" in her right shoulder that was so acute she thought she would faint.  *Id.* ¶ 5.  She reports that she was unable to sleep that night due to the pain.  *Id.* ¶ 7.

When Ms. Gonzalez arrived at Northeastern, she missed the first several volleyball practices due to shoulder pain.  *Id.* ¶¶ 10–11.  On August 14, 2019, she visited the team physician at Boston Children's Hospital and was seen by Dr. Michael Beasley.  *Id.* ¶ 12.  Dr. Beasley examined her right shoulder and ordered an MRI.  *Id.*  Based on the examination, he suspected that her shoulder was inflamed due to "shoulder injury related to vaccine administration (SIRVA)," which is "a well recognized inflammatory response noted after administration of vaccines higher than normal in the deltoid region."  Pet'r's Ex. 2 at 5, ECF No. 1-4.  According to an MRI specialist, the MRI scan demonstrated a "focal fluid collection deep to the lateral aspect of the deltoid" that appeared to be "within the subdeltoid bursa."  *Id.* at 7. The specialist also noted that the right shoulder had "mild to moderate tendinosis of the supraspinatus tendon, without a partial or full thickness tear," as well as "mild tendinosis of the

---

[1] Ms. Gonzalez also received a human papillomavirus ("HPV") vaccine on the same date. Pet'r's Ex. 10 at 193, ECF No. 14-1.  The HPV vaccine, however, is not at issue in this case.

infraspinatus and subscapularis tendons."[2]  *Id.*  Dr. Beasley recommended that Ms. Gonzalez continue physical therapy with the team trainers and refrain from overhead activity.  ECF No. 1-3 ¶ 12.

## B.    Initial Treatment, Continued Symptoms, and Follow-up Treatment

Following Dr. Beasley's instructions, Ms. Gonzalez returned to the team trainers and began therapy exercises.  *Id.* ¶ 14.  On August 21, 2019, 22 days after vaccination, she returned to practice but did not do any overhead activity.  *Id.* ¶ 15.  That same day, team trainer Kate Delude evaluated Ms. Gonzalez.  Pet'r's Ex. 3 at 2, ECF No. 1-5.  The trainer noted that Ms. Gonzalez participated in volleyball practice that day and reported "one instance where she had pain but overall [said] she felt really good," with "no pain after practice."  *Id.*  By the end of August, her pain had improved slightly, and she played volleyball and participated in practices "despite continued pain and discomfort."  ECF No. 1-3 ¶ 16.  Toward the end of the season, however, Ms. Gonzalez stated that her shoulder weakened and became "more and more painful." *Id.*  Even so, on November 12, 2019, approximately three and a half months after vaccination, team trainer Olivia Hartman evaluated Ms. Gonzalez and noted, "Athlete has been back to normal activity since I came on as the volleyball athletic trainer 8/24.  Athlete has not complained of any shoulder pain or decreased [range of motion]."  ECF No. 1-5 at 2.

The season ended later that month, and Ms. Gonzalez returned home to Solana Beach, California, for winter break.  Pet'r's Ex. 12 ¶ 10, ECF No. 31-1.  While home, Ms. Gonzalez visited her primary care doctor for additional vaccines but, according to Ms. Gonzalez, requested that she receive them in her thigh because her right shoulder was still in pain.  ECF No. 14-1 at

---

[2] A "bursa" is defined as "a sac or sac-like cavity filled with a viscid fluid and situated at places in the tissues at which friction would otherwise develop."  *Bursa*, Dorland's Medical Dictionary 258 (33d ed. 2020).  "Tendinosis" is defined as "any pathologic condition of a tendon."  *Id.* at 1852.

65; ECF No. 31-1 ¶ 10.  Ms. Gonzalez further reports that when she returned to Northeastern in January 2020, she told the team trainers that she was still experiencing pain and discomfort. ECF No. 31-1 ¶ 11.  She planned to perform daily resistance band exercises to strengthen her shoulder.  *Id.*  When Northeastern's campus closed in March 2020 due to the COVID-19 pandemic, Ms. Gonzalez again returned home to California.  *Id.* ¶ 12.  While home, she did not play volleyball.  *Id.*  She instead rested and performed a daily stretching, icing, and heating regimen.  *Id.*

Returning to campus in August 2020, she played volleyball until the end of September. *Id.* ¶¶ 14–15.  However, on September 29, 2020, she informed the trainers that she felt a "sharp pain" in her right shoulder during team service drills.  *Id.* ¶ 15.  The trainers worked with her on therapy and stretching exercises for two months before recommending that she see the team physician at Boston Children's Hospital.  *Id.*  The team physician, Dr. Gian-Michel Corrado, examined Ms. Gonzalez, noting that her "pain began insidiously in the context of being a hitting volleyball player."  Pet'r's Ex. 13 at 13, ECF No. 31-2.  Of the "multitude" of possible causes, "the most concerning" to Dr. Corrado was a "labral tear or rotator cuff tear."  *Id.*  Dr. Corrado ordered an MRI.  *Id.*; *see* ECF No. 1-3 ¶ 22.  At a follow-up appointment on December 7, 2020, Dr. Corrado explained that the MRI showed a rotator cuff tear and recommended that Ms. Gonzalez see a shoulder specialist.  *Id.* ¶ 24; *see* ECF No. 1-4 at 13; ECF No. 31-2 at 11.

Ms. Gonzalez then saw specialist Dr. Arun Ramappa at Beth Israel Deaconess Medical Center on December 14, 2020.  ECF No. 31-1 ¶ 17.  After reviewing the MRI results, Dr. Ramappa recommended physical therapy.  *Id.*  Not seeing improvement after several months of therapy, on February 4, 2021, Ms. Gonzalez sought a second opinion from Dr. Peter Chalmers at the University of Utah Orthopaedics Center.  *Id.* ¶ 19.  Dr. Chalmers, an orthopedic surgeon,

examined her, reviewed her MRI, and recommended surgery.  Pet'r's Ex. 6 at 156, ECF No. 10-1.  On February 12, 2021, Dr. Chalmers performed the surgery, an outpatient procedure comprised of a "right shoulder arthroscopic extensive intraarticular debridement," *id.* at 53, including a "subacromial bursectomy," *id.* at 55; debridement of an "area of bursa on the bursal side of the anterior supraspinatus," *id.*; and a "right open biceps tenodesis," *id.* at 53.  Dr. Chalmers provided an affidavit for purposes of the litigation stating that Ms. Gonzalez's immunization injury "more likely than not" contributed to the symptoms that she reported to him in February 2021.  Pet'r's Ex. 14 ¶ 6, ECF No. 33-1.

### C.    Procedural History

On February 26, 2021, Ms. Gonzalez filed a petition with the Office of Special Masters seeking compensation under the Vaccine Act, 42 U.S.C. § 300aa-11(c).  Pet. at 1, ECF No. 1. She alleged that the administration of the HPV vaccine, the meningitis vaccine, or both, caused her to develop SIRVA.  *Id.*  Ms. Gonzalez filed an amended petition in June 2022, clarifying her factual assertions and narrowing her claim to the meningitis vaccine.  Am. Pet. at 1, ECF No. 23-1.

On November 7, 2022, Respondent filed his Rule 4(c) report and moved to dismiss the case, arguing that Ms. Gonzalez failed to demonstrate that her injury lasted for more than six months, as is necessary to meet the Vaccine Act's "severity" requirement.  *See* Resp't's Mot. to Dismiss, ECF No. 28; Resp't's Rule 4(c) Report, ECF No. 29.  Ms. Gonzalez filed a response on December 23, 2022, asserting that the record shows her symptoms persisted throughout the 2019 volleyball season and into 2020, as she applied ice and heat treatments, took over-the-counter pain medications, and continued to experience pain during the offseason.  Pet'r's Resp. to Resp't's Mot. to Dismiss at 9–10, ECF No. 32.  She also filed additional medical records, a

supplemental affidavit, and the affidavit from Dr. Chalmers.  *See* Pet'r's Ex. 7–9, ECF No. 12; ECF No. 14; ECF No. 31-1; ECF No. 33-1.

### D.     The Entitlement Decision

On May 6, 2024, the Chief Special Master issued his Decision Dismissing Petition, denying Ms. Gonzalez's request for compensation and dismissing her case.  Dec. Dismissing Pet. at 1–2, ECF No. 34.  The Chief Special Master held that Ms. Gonzalez had not met her burden of showing that she suffered the residual effects of SIRVA for more than six months and that, under the Vaccine Act's severity requirement, her petition must therefore be dismissed.  *Id.*; *see* 42 U.S.C. §§ 300aa-11(c)(1), 300aa-13(a)(1)(A).

In reaching his decision, the Chief Special Master stated that he reviewed the complete record, including all medical records, affidavits, Respondent's Rule 4(c) report, and additional evidence filed.  ECF No. 34 at 4.  He summarized the statutory severity requirement, which a petitioner must meet to state a claim for compensation under the Vaccine Act, explaining that Ms. Gonzalez had to demonstrate that she either: (i) suffered the residual effects or complications of the injury for more than six months after receiving the vaccine, (ii) died from receiving the vaccine, or (iii) suffered an injury from the vaccine that resulted in inpatient hospitalization and surgical intervention.  *Id.* at 9 (citing 42 U.S.C. § 300aa-11(c)(1)(D)).

The Chief Special Master then considered Ms. Gonzalez's allegation that she suffered residual effects or complications of SIRVA for more than six months.  *See id.* at 2.  In this case, given the date of vaccination, Ms. Gonzalez needed to show that she suffered SIRVA symptoms beyond January 30, 2020.  *Id.* at 9.  The Chief Special Master noted that Ms. Gonzalez was evaluated on November 12, 2019, by a team trainer who stated that Ms. Gonzalez had "been back to normal activity" since August 24, 2019, and had "not complained of any shoulder pain or

decreased [range of motion]." *Id.* at 9–10 (citation omitted).  He also noted that Ms. Gonzalez had minimal treatment through November 2019, when she ceased medical care for the injury. *Id.* at 10.  Additionally, for the next 10 months, through September 2020, there is no record of Ms. Gonzalez receiving any treatment for her right shoulder.  *Id.*

As to the pain complained of in September 2020, the Chief Special Master observed that on September 30, 2020, the team trainer stated that Ms. Gonzalez "believes she hurt her [r]ight shoulder last night during practice, her serving shoulder . . . .  She has not been keeping up with the preventative exercises they were taught last year." *Id.* (citation omitted).  He also noted that from "that date forward, Ms. Gonzalez's right shoulder symptoms are consistently associated with playing volleyball." *Id.* (citation omitted).  Moreover, the Chief Special Master emphasized that in the six months following her vaccination Ms. Gonzalez was able to engage in a "strenuous exercise program" despite her pain and that she obtained treatment on multiple occasions for pain in areas other than her shoulder. *Id.* at 11.

He therefore concluded that her "shoulder pain appears to have mostly resolved by August 2019" and that complaints of "renewed pain after September 2020 seem more likely the product of an athletic injury." *Id.* at 10.  The Chief Special Master acknowledged that a treatment gap does not bar a finding of severity but found that, here, "the mix of evidence preponderates against a favorable severity finding." *Id.* at 10–11.

### E.    The Motion for Review

On June 4, 2024, Ms. Gonzalez timely filed a Motion for Review of the Chief Special Master's Decision Dismissing Petition.  Pet'r's Mot. for Review at 1, ECF No. 35-1.  Ms. Gonzalez asks the Court to set aside any of the Chief Special Master's findings of fact and conclusions of law that are arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law, and issue its own findings of fact and conclusions of law or remand the petition to the Chief Special Master for further proceedings. *Id.* Specifically, Ms. Gonzalez claims that the Chief Special Master erred by failing to consider the entire record, especially Ms. Gonzalez's affidavit testimony averring that (a) she felt immense pressure to return to playing volleyball and played through her shoulder pain and discomfort until the season ended in November 2019, and that (b) in December 2019 she visited her primary care physician for a vaccine and asked to receive it in her thigh instead of her arm due to continuing shoulder pain. *Id.* at 8. She further claims that the Chief Special Master failed to consider Dr. Chalmers' affidavit testimony and opinion that Ms. Gonzalez's SIRVA contributed to the symptoms she suffered from in February 2021 prior to surgery, and he failed to compare her August 2019 MRI with her November 2020 MRI, which she argues show consistent findings and support Dr. Chalmers' opinion. *Id.* at 8, 9. Moreover, Ms. Gonzalez claims that the Chief Special Master placed undue emphasis on notes from a team trainer stating that Ms. Gonzalez had "been back to normal activity" by August 2019 and "had not complained of any shoulder pain," despite the fact that the contrary evidence just discussed undercut the finding that she was symptom-free in November 2019. *Id.* at 9.

On June 27, 2024, Respondent filed his response to Ms. Gonzalez's Motion for Review, arguing that the Chief Special Master's decision should be affirmed because, under the deferential standard of review, Ms. Gonzalez has not shown that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. Resp't's Resp. to Pet'r's Mot. for Review at 1, 18, ECF No. 38. The decision should be upheld, Respondent argues, because the Chief Special Master's findings are supported by ample record evidence.

## II.  LEGAL STANDARD

### A.    The Court's Standard of Review

This Court has jurisdiction to review a special master's entitlement decision upon the timely request of either party.  42 U.S.C. § 300aa-12(e)(2).  Under the Vaccine Act, a court deciding a motion for review may:

(A)  uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B)  set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C)  remand the petition to the special master for further action in accordance with the court's direction.

*Id.* §§ 300aa-12(e)(2)(A)–(C); *accord* Vaccine Rule 27(a)–(c).  The three standards of review in 42 U.S.C. § 300aa-12(e)(2)(B) "vary in application as well as degree of deference," as each standard "applies to a different aspect of the judgment."  *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

When reviewing the special master's factual findings, the Court applies the arbitrary and capricious standard.  The scope of review is thus limited and highly deferential.  *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000); *see Munn*, 970 F.2d at 870 (review of a special master's factual findings is "well understood to be the most deferential possible" (citations omitted)); *see also Dougherty v. Sec'y of Health & Hum. Servs.*, 141 Fed. Cl. 223, 229 (2018) ("[S]pecial masters have broad discretion to weigh evidence and make factual determinations.").  The Court does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder."  *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).  In other words, the

Court should not "second guess the Special Master[']s fact-intensive conclusions." *Cedillo v. Sec'y of Health & Hum. Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010) (quotations omitted) (quoting *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993)). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).

However, when a question of law is at issue—for example, a special master's interpretation of the Vaccine Act—the Court applies the "not in accordance with law" standard, which is de novo review. *See id.* at 1527; *Sanchez ex rel. Sanchez v. Sec'y of Health & Hum. Servs.*, 34 F.4th 1350, 1353 (Fed. Cir. 2022). The third and final standard of review, abuse of discretion, applies when the special master excludes evidence or otherwise limits the record upon which he relies. *See Munn*, 970 F.2d at 870 n.10.

## B. Burden of Proof for a Table Injury

A petitioner may establish that a vaccine caused an alleged injury in one of two ways. *See* 42 U.S.C. § 300aa-11(c); *Munn*, 970 F.2d at 865. First, a petitioner who has received a vaccine listed on the Vaccine Act's Injury Table ("Table") may recover for any resulting illness, disability, injury, or condition that is also listed on the Table, or a significant aggravation thereof. 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-14; *see Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1277–78 (Fed. Cir. 2005) (describing a "Table injury"). Second, a petitioner who has received a vaccine listed on the Table, but whose vaccine-related injury does not meet Table requirements, may recover under an "off-Table" theory. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)(ii), 300aa-13(a)(1)(A).

In a Table injury case, a petitioner must prove the injury by a preponderance of evidence. *See id.* § 300aa-13(a)(1)(A). To meet that burden, the petitioner must demonstrate that she meets five criteria. Specifically, the petitioner must show that (1) she received a Table vaccine, *see id.* § 300aa-11(c)(1)(A);[3] (2) she received the vaccine in the United States or meets a limited exception, *see id.* § 300aa-11(c)(1)(B); (3) she either suffered a Table injury or died, *see id.* § 300aa-11(c)(1)(C); (4) she suffered the "residual effects or complications" from such injury for more than six months or that such injury led to "inpatient hospitalization and surgical intervention," *see id.* § 300aa-11(c)(1)(D); and (5) she has not already collected civil damages via award or settlement for such injury, *see id.* § 300aa-11(c)(1)(E).

### III. DISCUSSION

Ms. Gonzalez raises one basic objection to the challenged dismissal decision: that the Chief Special Master's weighing, consideration, and discussion of evidence was arbitrary and capricious or otherwise not in accordance with law. Specifically, she contends that in finding her Table injury did not persist for more than six months, the Chief Special Master failed to consider or discuss certain relevant record evidence—for example, affidavits submitted by her and Dr. Chalmers—that purportedly supports her claim. ECF No. 35-1 at 7. Instead, Ms. Gonzalez contends that the Chief Special Master placed "undue emphasis" on the team trainer notes. *Id.* at 9. These failures, she argues, render arbitrary and capricious the Chief Special Master's finding that the injury did not persist for more than six months. And as a corollary, Ms. Gonzalez contends his conclusion that she did not meet the statutory severity requirement was contrary to law.

---

[3] For the list of Table vaccines, see 42 U.S.C. § 300aa-14(a) (initial list) and 42 C.F.R. § 100.3(a) (additional vaccines and injuries).

Having considered the arguments and record, the Court rejects Ms. Gonzalez's objection. The Chief Special Master appropriately considered the whole record in reaching his factual findings. And based on those findings, he rationally concluded that Ms. Gonzalez's injury did not persist for more than six months. Because this determination was within the Chief Special Master's purview as factfinder, the Court declines to review his finding de novo. Accordingly, the Chief Special Master's decision is upheld.

A.    **The Chief Special Master's Finding that Ms. Gonzalez's Injury Did Not Persist for More Than Six Months Was Not Arbitrary and Capricious.**

Ms. Gonzalez challenges the Chief Special Master's finding that her SIRVA injury did not last more than six months. In arguing that the Chief Special Master's severity determination was arbitrary and capricious, Ms. Gonzalez notes that the Vaccine Act directs the special master to base his findings on "the record as a whole." 42 U.S.C. § 300aa-13(a)(1). As discussed above, she asserts that the Chief Special Master failed to consider or even discuss her supplemental affidavit testimony, Dr. Chalmers' affidavit testimony, or the purportedly consistent findings from her August 2019 and November 2020 MRIs. ECF No. 35-1 at 8–10. Instead, Ms. Gonzalez asserts that the decision unduly focused on team trainer notes suggesting, for example, that Ms. Gonzalez had been "back to normal activity" by August 2019. *Id.* at 9.

The Court finds that the Chief Special Master's decision was not arbitrary and capricious. Nothing in his decision suggests that he failed to "consider[] the relevant evidence of record." *Hines*, 940 F.2d at 1528. On the contrary, the Chief Special Master affirmatively indicated that he based his findings on "a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) report, and additional evidence filed." ECF No. 34 at 4. This representation is supported by his findings of fact, which provide a detailed summary of the evidence to include the testimony in Ms. Gonzalez's initial affidavit and Dr. Chalmers' affidavit,

as well as Ms. Gonzalez's medical records and MRIs.  *See id.* at 4–9.  Although the decision

does not expressly cite Ms. Gonzalez's supplemental affidavit or refer to the vaccine she

received in her thigh in December 2019, that does not in itself render the decision arbitrary and

capricious.  As judges of this court have recognized, a special master need not "'discuss every

piece of evidence or testimony in [his or] her decision.'"  *Simanski v. Sec'y of Health & Hum.*

*Servs.*, 115 Fed. Cl. 407, 436 (2014) (quoting *Snyder ex rel. Snyder v. Sec'y of Health & Hum.*

*Servs.*, 88 Fed. Cl. 706, 728 (2009)), *aff'd*, 601 F. App'x 982 (Fed. Cir. 2015).  Indeed, Ms.

Gonzalez's own affidavits (both initial and supplemental) are the type of evidence that the Court

presumes the Chief Special Master considered.  *See Hazlehurst v. Sec'y of Health & Hum.*

*Servs.*, 604 F.3d 1343, 1352 (Fed. Cir. 2010).

  Ms. Gonzalez references no authority establishing that a special master presumptively

fails to consider relevant parts of the record where, as here, he does not cite certain pieces of

evidence that a petitioner finds important.  She points to *Cedillo* to support her argument that the

decision should have explicitly considered Dr. Chalmers' and her affidavits, the December 2019

vaccine, and a comparison of her MRIs.  *See* ECF No. 35-1 at 7–8 (citing *Cedillo*, 617 F.3d at

1345).  But *Cedillo* establishes no such requirement.  Rather, in that case, the United States Court

of Appeals for the Federal Circuit upheld a special master's decision, describing it as "careful

and thorough."  *Cedillo*, 617 F.3d at 1345.  The Court noted that the special master "stated his

reasons for rejecting or discounting each item of evidence in which the petitioners relied," *id.*,

but nowhere did it suggest that to satisfy judicial review he must always do so.  In fact, *Cedillo*

stated that a special master's factual findings should be upheld if they are "based on evidence in

the record that [is] not wholly implausible," and the Court upheld the special master's decision

because it was "rationally supported by the evidence, well-articulated, and reasonable." *Id.* at 1338 (quoting *Lampe*, 219 F.3d at 1363); *id.* at 1349.

Nor does Ms. Gonzalez reference authority that supports her related argument that the Chief Special Master's decision should be set aside because he failed to explain why he rejected Dr. Chalmers' affidavit testimony. *See* ECF No. 35-1 at 9–10. She concedes that special masters "are undoubtedly given discretion in determining the credibility of witnesses" but insists that they must discuss such determinations. In support of this argument, Ms. Gonzalez cites *Elson ex rel. Hodge v. Secretary of Health and Human Services*, 164 Fed. Cl. 633 (2023). In *Elson*, the special master rejected the petitioner's testimony as a whole because of inconsistencies between certain statements and the medical record. *Id.* at 642–43. The court set aside the special master's conclusion because in determining the reliability and credibility of the petitioner he failed to discuss numerous other medical records that were supportive of the particular testimony at issue. *Id.* at 646. Here, however, the only other medical records that Ms. Gonzalez points to are the MRIs, which the Chief Special Master considered and discussed. *See* ECF No. 34 at 5, 7. Moreover, Ms. Gonzalez does not explain how the Chief Special Master's review of the MRIs was problematic, nor does she elaborate on her allegation that the MRI results were consistent and supportive of Dr. Chalmers' opinion. *See* ECF No. 35-1 at 9; *compare* ECF No. 1-4 at 7 (August 2019 MRI report) *with* ECF No. 12-1 at 6–7 (November 2020 MRI report). Dr. Chalmers' affidavit did not compare the two MRIs or even mention the August 2019 MRI. *See generally* ECF No. 33-1.

To be sure, the Chief Special Master gave more "weight to the fact that [Ms. Gonzalez] was able to engage in a strenuous exercise program associated with playing college volleyball despite her pain." ECF No. 34 at 11. He also gave more weight to a team trainer's note

indicating that in August 2019 Ms. Gonzalez had been "back to normal activity," *id.* at 9, and to a September 2020 note indicating that Ms. Gonzalez "believe[d] she hurt her [r]ight shoulder last night during practice," *id.* at 10.  But his weighing of these facts does not suggest that he ignored other facts.  Indeed, the broad discretion to weigh evidence is "within the purview of [the special master as] the fact finder."  *Porter*, 663 F.3d at 1249; *see R.J. ex rel. W.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1235 (Fed. Cir. 2024) ("It is within a special master's discretion to weigh evidence." (citation omitted)).

The record demonstrates that the Chief Special Master exercised that discretion reasonably and drew plausible inferences from the facts.  *See Hines*, 940 F.2d at 1528.  In this instance, the Chief Special Master explained that contemporaneous team trainer records showed no evidence of pain, decreased range of motion, or treatment of Ms. Gonzalez's shoulder from November 2019 onward.  ECF No. 34 at 9–10.  Notwithstanding her affidavit testimony describing continued pain, he noted a 10-month gap in any treatment related to her shoulder even though she presented for treatment of pain in other parts of her body.  *Id.* at 6, 10, 11.  And he highlighted Ms. Gonzalez's apparent ability to engage in a competitive, college-level volleyball program less than six months after vaccination.  *Id.* at 10–11.  As to the renewed pain experienced in September 2020, the Chief Special Master again relied on contemporaneous trainer notes indicating that Ms. Gonzalez hurt her shoulder while serving during practice, and both contemporaneous trainer notes and medical records after that date (including from visits with Dr. Chalmers) that associated the new pain with playing volleyball.  *See id.* at 10.  The Court finds no error in the Chief Special Master's reliance on this evidence over Ms. Gonzalez's and Dr. Chalmers' contrary affidavit testimony.  *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993) ("[T]he Supreme Court counsels that oral testimony in

conflict with contemporaneous documentary evidence deserves little weight.").  Nor were his findings of fact based on this evidence implausible.

Moreover, the Chief Special Master "articulated a rational basis" for his decision.  *Hines*, 940 F.2d at 1528.  As he explained, consistent with the findings, "the record does not preponderate in favor of the conclusion that [Ms. Gonzalez's] SIRVA likely continued" after November 2019, ECF No. 34 at 11, and the complaints of pain that emerged "after September 2020 seem more likely the product of an athletic injury," *id.* at 10.  Ample record evidence supports this determination.  *See id.* at 9–11.  As a result, the Chief Special Master's determination that Ms. Gonzalez did not establish the severity requirement was rational.

Lastly, the Chief Special Master did not act arbitrarily and capriciously by placing "undue emphasis" on team trainer notes.  *Paluck v. Sec'y of Health & Hum. Servs.*, 786 F.3d 1373, 1383 (Fed. Cir. 2015).  Ms. Gonzalez's assertion to the contrary is essentially an extension of her argument that the Chief Special Master improperly weighed the facts.  In *Paluck*, the Federal Circuit reversed a special master's finding that the petitioner did not experience progressive neurodegeneration following vaccination.  *Id.*  The Court held that the record contained "no reasonable basis" for his finding; rather, "compelling evidence" supported the petitioner.  *Id.* at 1382.  The Court also found that the special master placed undue emphasis on evidence showing "relatively insignificant variations in muscle tone," even though other evidence explained why those variations were immaterial.  *Id.* at 1383 ("[B]ecause physical therapy can stretch muscles, the fact that K.P.'s muscle tone fluctuated during the period when he was receiving chiropractic therapy . . . did not mean that his overall condition was improving." (citation omitted)).  This lack of record evidence, combined with the "short shrift"

the special master gave evidence supporting the petitioner, made the decision arbitrary and capricious. *Id.*

This case, however, is not like *Paluck*. The Court has little doubt that the Chief Special Master's decision emphasized team trainer notes, but the emphasis he placed on them was far from undue. Instead, the Chief Special Master cited ample record evidence to support his determination that Ms. Gonzalez's SIRVA lasted less than six months. *See* ECF No. 34 at 9–11. The evidence detailed in his decision, including the team trainer notes suggesting that Ms. Gonzalez had returned to normal activity in August 2019 and that she suffered an athletic injury to her shoulder in September 2020, demonstrates the rational basis for his determination. In pursuit of his duty to consider the whole record, the Chief Special Master considered these notes—in combination with other consistent evidence including contemporaneous medical records—and assessed their weight accordingly. The Court does not find his weighing irrational, and his decision therefore does not run afoul of the arbitrary and capricious standard.

In sum, Ms. Gonzalez's core dispute with the Chief Special Master appears to be a disagreement with the weight he assigned different pieces of evidence. As discussed above, allocating relative weight to evidence is a matter of fact-finding within the special master's purview. It is therefore "extremely difficult to demonstrate" reversible error here, *Hines*, 940 F.2d at 1528, and ultimately Ms. Gonzalez does not clear that hurdle. For these reasons, the Court declines to set aside the Chief Special Master's decision as arbitrary and capricious.

**B.    The Court Declines to Review the Chief Special Master's Severity Determination De Novo.**

Ms. Gonzalez further argues that, because the Chief Special Master failed to consider all the relevant evidence in the record, his conclusion that Ms. Gonzalez failed to satisfy the severity requirement is not in accordance with law. *See* ECF No. 35-1 at 10. Respondent responds that

this "attempt to cast the [severity determination] as a question of law under the 'not in accordance with law' standard" is "without merit" because such a determination is a factual finding. ECF No. 38 at 18. Ms. Gonzalez's argument appears to be derivative of her core claim that the Chief Special Master's weighing of evidence was erroneous. In any event, she challenges a quintessential finding of fact, not a legal conclusion. *See Wyatt v. Sec'y of Health & Hum. Servs.*, 825 F. App'x 880, 886, 887 (Fed. Cir. 2020) (categorizing special master's determination that an injury lasted more than six months as a factual finding); *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1381 (Fed. Cir. 2021) (applying arbitrary and capricious review to special master's finding that injury lasted more than six months); *id.* at 1384 (holding "a reasonable *fact finder* could" evaluate Kirby's testimony as special master did) (emphasis added)).

Ms. Gonzalez does not contest that the Vaccine Act has a severity requirement that requires her injury to have lasted more than six months. *See* ECF No. 35-1 at 7, 9–10 (arguing that Ms. Gonzalez meets the severity requirement); ECF No. 23-1 ¶ 28 (alleging that Ms. Gonzalez sustained a right shoulder SIRVA injury for a period lasting "longer than six months"). Nor does she argue that she meets the severity requirement even if the Chief Special Master's factual findings are correct—in other words, she does not contest his interpretation of the statute's requirement. *Cf., e.g.*, *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1004–05 (Fed. Cir. 2022) ("The *construction* of 'residual effects' in the Vaccine Act is a question of law, which we review de novo." (emphasis added) (citation omitted)). Her challenge, then, raises not a legal question, but a factual one. That means the decision receives arbitrary and capricious review.

Even if Ms. Gonzalez is implying that the severity determination here is based on a mere inference drawn from facts or the weighing of facts, the Court would still give this determination deference as a factual finding.  The Federal Circuit has repeatedly held that such inferences and weighing are factual findings.  *See, e.g.*, *Sanchez*, 34 F.4th at 1354–55 (categorizing special master's crediting of family testimony as factual finding); *Kottenstette v. Sec'y of Health & Hum. Servs.*, 861 F. App'x 433, 439, 442 (Fed. Cir. 2021) (categorizing plausible inferences from record as factual findings); *Lampe*, 219 F.3d at 1360 (same); *W.J.*, 93 F.4th at 1235 (categorizing special master's exercise of "discretion to weigh evidence" as factual finding).  Because it does not set aside the Chief Special Master's findings of fact as arbitrary and capricious, the Court declines to replace those findings with its own.

## IV.  CONCLUSION

For the above reasons, the Court finds that the Chief Special Master's examination of the record in Ms. Gonzalez's case, including all medical records and affidavits, resulted in a decision that was not arbitrary and capricious or contrary to law.  The Chief Special Master's Decision Dismissing Petition is therefore affirmed, and Petitioner's Motion for Review (ECF No. 35) is **DENIED**.  The Clerk of the Court shall enter judgment consistent with this Opinion.

**SO ORDERED**.

Dated: October 24, 2024                    */s/ Kathryn C. Davis*
                                            KATHRYN C. DAVIS
                                            Judge